51 N.Y.2d 679 (1980)
Monroe-Livingston Sanitary Landfill, Inc., Appellant,
v.
Town of Caledonia, Respondent.
Court of Appeals of the State of New York.
Argued October 15, 1980.
Decided December 22, 1980.
Robert G. Harvey and G. Robert Witmer, Jr., for appellant.
Patrick M. Keefe for respondent.
Chief Judge COOKE and Judges JASEN and GABRIELLI concur with Judge WACHTLER; Judge FUCHSBERG dissents and votes to reverse in a separate opinion in which Judges JONES and MEYER concur.
*682 WACHTLER, J.
The plaintiff owns and operates a 190-acre State licensed sanitary landfill in the Town of Caledonia, Livingston County. While the plaintiff was negotiating a contract with Monroe County to handle all of that county's refuse, the Town of Caledonia enacted its Sanitary Landfill Ordinance of July 17, 1976. Subdivision C of section 7 of that ordinance provides: "Refuse generated outside of the Town of Caledonia, New York, will not be accepted at facilities licensed by the Town of Caledonia unless authorized by the Town Board *683 and consistent with the regional comprehensive plan as it relates to solid waste management."
The plaintiff brought this declaratory judgment action seeking a determination that the ordinance, and particularly subdivision C of section 7, is unconstitutional. During a lengthy trial both sides presented extensive testimony as to whether or not the town and private water supplies would be contaminated if an increased volume of refuse were permitted at the landfill.
The trial court found that the zoning board's determination of the potential safety hazard was supported by the record and that the plaintiff had failed to rebut the presumption that the ordinance was a constitutional and legitimate exercise of the town's police power to protect the public health. This determination was unanimously affirmed by the Appellate Division.
On this appeal plaintiff argues, first, that article 27 of the Environmental Conservation Law dealing with solid waste disposal supersedes and by pre-emption nullifies the town ordinance. To draw this conclusion, however, would require us to say that the mere fact that the State deals with a subject it automatically pre-empts it. We have never construed the principle of pre-emption that broadly. Indeed, where local government is otherwise authorized to act, it will be prohibited from legislating on a subject only if the State pre-empts the field through legislation evidencing a State purpose to exclude the possibility of varying local legislation (People v Cook, 34 N.Y.2d 100, 109). When this occurs a local law may be said to be inconsistent with a State law because it prohibits something which the State law would consider acceptable (e.g., Wholesale Laundry Bd. of Trade v City of New York, 12 N.Y.2d 998). But that is not present here.
In fact the statute in express terms disclaims any State purpose to either supersede or preclude the enactment of local ordinances so long as they are consistent "with at least the minimum applicable requirements" of those regulations promulgated by the statute (ECL 27-0711) and speaks specifically, not of the preclusion, but rather the inclusion *684 of local government in the planning and control of problems endemic to waste management (ECL 27-0101, subds 1, 2; 27-0703, subd 3; 27-0707, subds 3, 4).
Plaintiff's second contention, relying upon the Supreme Court's decision in Philadelphia v New Jersey (437 US 617), is that the town's ordinance violates the interstate commerce clause of the Federal Constitution. In the Philadelphia case there was, at the time of the enactment of the prohibited legislation, actual dumping in New Jersey of refuse generated outside of the State of New Jersey. In that case the discrimination against interstate commerce would seem apparent; however, on the facts of the case now before us, it is hard to see how it can be said that the practical effect of the ordinance is to discriminate against interstate commerce.
The ordinance is not aimed at interstate refuse, but excludes any refuse from outside the town. Although most of the plaintiff's business involves refuse from surrounding communities, all of those communities are located within the State and there is no contention or indication that any of the refuse originates beyond the State borders. Nor is there any suggestion that the ordinance affects other Caledonia business concerns which would deal in interstate refuse or that the plaintiff has contracted for, reasonably anticipates, or intends to accept interstate refuse. In fact, through the assertion in its briefs that most if not all of its refuse business is and will continue to be derived from communities within the State, plaintiff has itself succeeded in negating any possible inference that the ordinance has an actual impact on interstate commerce. In the present suit it simply seeks to maintain the status of its business prior to the enactment of the ordinance.
Nor can it be successfully argued that the ordinance in question affects interstate commerce by the threat of a "ripple effect" through the imposition of "cumulative burdens" (see United States v Rock Royal Co-op., 307 US 533, 569-570). To do so we would have to say that this ordinance interferes with interstate commerce because Monroe County would be forced to deposit its refuse elsewhere thereby indirectly *685 displacing out-of-State refuse which would otherwise be shipped to the landfill sites that Monroe would be using. Few local ordinances relating to the planned development of a community could withstand constitutional scrutiny if subjected to that type of analysis. For example, a zoning restriction upon the size or number of dwelling units that may be built within a town would have an effect upon interstate commerce, in that it would reduce the flow of building materials across State lines. Surely it cannot be maintained that, for this reason, the commerce clause precludes the adoption of such zoning ordinances by local governments.
In view of the fact that the plaintiff, the operator of the only privately owned landfill in the town which is open to the public, is not engaged in the importation of refuse from out of State, there has been no showing that, in practice, the ordinance has the effect of inhibiting or discriminating against interstate commerce. Neither the cases cited by the plaintiff nor the general principles stated in the case of Dutchess Sanitation Serv. v Town of Plattekill (51 N.Y.2d 670 [decided herewith]) compel a contrary conclusion. In the absence of something more definitive, the presumption of constitutionality should be sufficient to sustain the ordinance.
Accordingly the order of the Appellate Division should be affirmed, with costs.
FUCHSBERG, J. (dissenting).
In my view and, that of my fellow dissenters, while the town's ordinance is not pre-empted by State law, it is in conflict with the commerce clause of the United States Constitution (art I, § 8), both "on its face and in its plain effect" (Philadelphia v New Jersey, 437 US 617, 627). The order of the Appellate Division should, therefore, be reversed and the ordinance declared unconstitutional per se.
As we see it, for all legal purposes, the factual case here is on all fours with Dutchess Sanitation Serv. v Town of Plattekill (51 N.Y.2d 670 [decided herewith]). Essentially, there are only two factual differences, neither material.
One is that the ordinance here contains an exception to *686 its exclusion of refuse generated outside the town: the town board, "consistent with the regional comprehensive plan", may authorize acceptance of out-of-town refuse despite the exclusion. In contrast, refuse generated inside the town is not at the mercy of a grant or denial of such special leave. Even more telling is the fact that the flawed statute in Philadelphia v New Jersey (supra), the case that largely controls the Dutchess decision, similarly provided that the refuse it otherwise excluded could be admitted if and when authorized by the promulgation of appropriate regulations by New Jersey's Environmental Commissioner.
The second difference is that in Dutchess the landfill company expected to receive some refuse from out-of-State customers, while here the customers were entirely out-of-town rather than out-of-State. However, plaintiff here proved that its out-of-town customers include ones who themselves are engaged in interstate commerce in a substantial way.[1] Among these customers are a large nationally known interstate corporation (Delco), a sizable exporter (Gleason Works), the franchises of a nationwide fast food chain (Kentucky Fried Chicken) and a utility which supplies vital services to numerous other businesses engaged in interstate commerce (Rochester Gas & Electric). Local activity may, to a cognizable degree, indirectly impose on interstate commerce (see Dutchess Sanitation Serv. v Town of Plattekill, supra, pp 675-676).
Nevertheless, the town argues that, since plaintiff's business presently involves refuse from surrounding communities located within the State, there can be no impact on interstate commerce. In doing so, however, it ignores the fact that the effect of the ordinance is to make it impossible for out-of-State carting companies to offer their business to the plaintiff or for the out-of-town customers who are engaged in or whose activities affect interstate commerce to continue to use the plaintiff's landfill. Where legislation *687 thus conceptually affects interstate commerce, there need be no quantitative showing of the impact (Fry v United States, 421 US 542, 547; Wickard v Filburn, 317 US 111, 129). The test is whether, viewed cumulatively alongside like potential conduct by others similarly situated, there is enough to activate the clause.
As both this and the Philadelphia cases well illustrate, the proliferation of legislation affecting garbage disposal is more than merely potential (Philadelphia v New Jersey, 437 US 617, supra). It is symptomatic of a pattern in which Federal and State regulation has reduced the surface area available for landfill use at one and the same time that waste production burgeons (Note, Commerce Clause and Interstate Waste Disposal: New Jersey's Options After the Philadelphia Decision, 11 Rut-Cam LJ 31). Experience teaches that parochial protectionist measures, fueled by an understandable but impermissible purpose to conserve the landfill site for the townspeople alone, are almost sure to spawn reciprocal exclusionary acts, which in totality would soon constitute a serious impediment to the free flow of interstate commerce. This threat is not outside the range of commerce clause interdiction.
Therefore, since, on the whole, the ordinance here is at least as offensive to the commerce clause as was the one in Dutchess, it may be useful to set out the factual and procedural environment in which it was enacted and now comes to us:
The plaintiff's landfill is licensed by the New York State Department of Environmental Conservation. Its operation began in the early 1960's. Subsequently all the waste material deposited throughout the ensuing period was generated outside the town. At the time the challenged ordinance was enacted, 95% or more of the refuse plaintiff accepted originated from without the town. Those it served include 40,000 to 50,000 households, several municipalities and hundreds of business establishments, including the ones heretofore mentioned.[2]
*688 When the plaintiff first informed the town that it had been negotiating with Monroe County for a contract under which the appellant would receive refuse collected from the City of Rochester, while the news was received critically by the town fathers, there was then no suggestion that any pollution issue existed. When, however, shortly thereafter, the Monroe County legislature formally authorized execution of the Rochester contract, the defendant's town board's response was to call a special session for the very next day, when it passed a resolution objecting to any contract involving Rochester waste and declaring that the board intended, "as a result of any such aforesaid contract", to pass an ordinance that would prohibit the deposit of refuse originating outside the town. In fulfillment of this promise, the ordinance, as may be gathered from the trial testimony of the town's supervisor and two of its board members, was designed to put the plaintiffs out of business. It took the following form: "Refuse generated outside of the Town of Caledonia, New York, will not be accepted at facilities licensed by the Town of Caledonia unless authorized by the Town Board and consistent with the regional comprehensive plan as it relates to solid waste management".
It is to be noted that the different treatment this legislation accords "refuse generated outside of the town" does not except refuse which originates from outside the State, a discrimination which would be no more or less repugnant to the commerce clause because the ordinance also discriminates against out-of-town refuse that originates within the State (see Dutchess Sanitation Serv. v Town of Plattekill, 51 N.Y.2d 670, 676, supra). In any event, the appellant then commenced this action for a judgment declaring the ordinance unconstitutional.
At the ensuing trial, despite the extraordinary burden that is placed on one who would justify State or local legislation which facially discriminates against interstate commerce "`both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives'" (Hughes v Oklahoma, 441 US 322, 336; emphasis *689 added), there was no showing that any alternatives were even considered.
As to the "local benefits", the town attempted to prove the existence of a potential for contamination of its water resources. For that purpose, it relied heavily on three or four reports,[3] which opined that the continued operation of the landfill might result in an adverse environmental impact. But Gary Olin, author of these reports, admitted on the stand that he had visited the landfill site only once, that this was his first professional job, that he was not a professional engineer, that he had no on-site experience in landfill construction practices and that his reports were based principally upon his review of reports prepared by others. Two other documents on which the town relied consisted of a letter and a map prepared by a geologist, Dr. Richard Young. The record shows that this letter was based not on field tests or surveys, but only a review of literature and Dr. Young's general knowledge of the valley area in which the town is located. No explanation was offered as to why, in the three years between the time of the Young report and the time of trial (especially since the landfill operations had been going on for some 15 years), no pollution had been found in any of the 50 to 100 wells in the area.
For its part, the landfill company presented proof that it had fully met the more stringent standards required for licensing by the State Department of Environmental Conservation (DEC) and that it had received no complaints from the DEC or the county health department. It also called Frank Clark (senior sanitary engineer for the DEC's solid waste department), Herman Davis (engineering geologist for the DEC), Earl Barcomb (chief of design and evaluation of the DEC's division of solid waste management) and Robert Navias, a geologist in the plaintiff's employ. Clark testified that he had visited the site often in his official capacity, that soil conditions were suitable, that there was no evidence of leachite migration (the feared contaminant) and that over the number of years that the *690 site had been used as a landfill any major weaknesses would have revealed themselves. Davis told the court that, as part of his official review of the plaintiff's most recent license application, he had not only visited the site, but consulted with representatives of the landfill company and the town, to wit, Davis, Navias and Dr. Clark; his review had resulted in a finding that the site is suitable for a landfill, that it is so located that refuse it receives does not encroach on the groundwater and that his investigation gave no indication of leachite contamination. Barcomb also concluded that the site was suitable, that the soils were sufficiently impermeable to prevent groundwater pollution and that the site fit in with the State's waste management plan for the area. Navias, the only interested person among these witnesses, added, from his special familiarity with the characteristics of the landfill, that two topographic barriers make it impossible for water to migrate from the landfill to the Caledonia wells.
After hearing both sides, the trial court found "no evidence that the landfill had effected [sic] the Village of Caledonia water wells or any other domestic well in the area of the landfill * * * [and] no evidence that either the Livingston County or the Monroe County Health Departments had ruled any of the domestic wells adjacent to the landfill to be unfit for use." Despite its conclusion that the ordinance was rational, it dismissed the complaint. The Appellate Division affirmed in a memorandum.
On the present appeal, the plaintiff, in addition to his pre-emption and commerce clause points, claims, inter alia, that the ordinance runs afoul of the equal protection and privileges and immunities provisions of the Constitution, that its adoption was arbitrary in that the reasons given for it were pretextual and that it discriminates against in-State out-of-town residents in violation of section 80 of the General Municipal Law. For the purposes of this dissent, in addition to our comments on pre-emption, we confine ourselves to the interstate commerce clause. That alone is sufficient to compel us to invalidate the ordinance.
Order affirmed, with costs.
NOTES
[1] We suggest that the hypothetical example the majority poses of a restriction on the size or number of dwelling units that may be built within a town is not apt. The assumed reduction in the rate of flow of building materials would not be based on their origin. And the effect on all sources of supply, intrastate and interstate, presumably would be alike (see Dutchess Sanitation Serv. v Town of Plattekill, 51 N.Y.2d 670, 676-677, supra).
[2] When this appeal was taken, after some three and a half years of litigation, the plaintiff, with the aid of a series of temporary injunctions, was still operating its business.
[3] It was not clear whether the town had received all four or only three of the reports.