AL TURI LANDFILL, INC., Plaintiff,

v.

TOWN OF GOSHEN and Barbara Regino, as Supervisor of the Town Board of the Town of Goshen, and John Matta, Donald Gray, Augustine DeRosa and Forster D. Greenhill, as Members of the Town Board of the Town of Goshen, Defendants.

No. 81 CIV. 4010 (CBM).

United States District Court, S.D. New York.

Feb. 1, 1982.*

* Final typed copy of opinion filed Dec. 29, 1981.

Keane & Beane, P.C. by Edward Beane, White Plains, N.Y., for plaintiff.

Cline, MacVean, Lewis & Sherwin, P.C. by Peter G. Striphas, Goshen, N.Y., for defendants.

## OPINION

MOTLEY, Chief Judge.

This is an action for declaratory and injunctive relief brought by plaintiff, Al Turi Landfill, Inc. (Al Turi) against the Town of Goshen (Town) and its Town Board. Al Turi is challenging certain provisions of an ordinance recently passed by defendants, Local Law 3 of 1981 (the Ordinance). In effect, the Ordinance: 1) limits the amount of land within the Town which can ever be used for solid waste disposal to 300 acres (Section 80–9(D)); 2) limits the size of individual solid waste disposal facilities to 50 acres (Section 80–9(B) & (C)); 3) imposes an inspection fee of $.25 per ton of solid waste deposited in a solid waste disposal facility (Sections 80–18); and 4) imposes fees for applications to construct and operate solid waste disposal facilities (Sections 80–16 and 80–17). Al Turi claims that these provisions of the Ordinance violate Article I, Section 8, Clause 3 of the United States Constitution (the Commerce Clause) and the due process provisions of the Fifth and Fourteenth Amendments.

On August 26, 1981, Al Turi moved for a preliminary injunction enjoining and restraining defendants from enforcing, effectuating or applying in any manner the challenged provisions of the Ordinance. Shortly thereafter, the parties submitted a Joint Statement of Stipulated Facts (Stipulation) and Joint Exhibits. In addition, Al Turi submitted a statement of facts it believed to be in dispute. Pursuant to Fed.R.Civ.P. 65(a)(2), the trial on the merits was consolidated with the hearing of the preliminary injunction application. This court now finds that the challenged provisions of the Ordinance are not violative of either the Commerce Clause or the Fourteenth Amendment. Accordingly, Al Turi's request for declaratory and injunctive relief is denied in all respects.

*Findings of Fact*

*The Parties*

Al Turi is a corporation duly organized under the laws of the State of New York with its principal place of business in Goshen, New York. (Stipulation ¶ 4) Its sole business is the ownership and operation of a 43.6 acre solid waste management facility (the Sanitary Landfill or Landfill)[1] in Goshen, New York. (Stipulation ¶ 5) The Sanitary Landfill was constructed for the deposit and disposal of refuse and solid waste. (Stipulation ¶ 4)

Since 1976, Al Turi has been a party to contracts with various carters for the interstate transportation and disposal of solid waste at the Sanitary Landfill. Additionally, since 1976, it has been a party to contracts with various carters for the intrastate transportation and disposal of solid waste collected from a number of municipalities in the State of New York. (Stipulation ¶¶ 6 & 7)

The Town of Goshen is a municipal corporation organized and existing under the laws of the State of New York. The Town Board, the legislative body of the Town, consists of the Supervisor of the Town and five Councilmen. (Stipulation ¶¶ 11 & 12)

There are currently two sanitary landfills operating in the Town. The first is the facility belonging to Al Turi. The second is a 244 acre landfill owned and operated by the County of Orange. With one minor exception, unless the Orange County Legislature authorizes the acceptance of solid waste from outside the County, this facility only accepts solid waste which originates in Orange County. It does not accept refuse originating outside of the State of New York. (Stipulation ¶ 13)

At all times relevant herein, the Town of Goshen Zoning Ordinance has provided that a dump (which would include a sanitary landfill) is a prohibited use in all zoning districts of the Town, with the exception of an official town dump or a dump duly licensed by the Town Board. (Stipulation ¶ 14)

*Al Turi's Existing and Proposed Facilities*

Al Turi's existing Sanitary Landfill is a 43.6 acre parcel of land in the Town of Goshen. (Stipulation ¶ 17) Pursuant to a contract entered into in 1973 by the original owner of the Landfill, Mr. Turi, and the Town, the Town and its residents were entitled to use the Landfill until 1978. The Landfill also accepted, and still accepts, refuse originating outside of the State of New York.[2] The Landfill cannot, however, under the terms of its permit, accept hazardous waste or toxic materials. (Stipulation ¶ 8)

Within a few months, the Landfill will be filled to capacity. (Stipulation ¶ 4) At that time, it is required to be closed in an environmentally sound manner in accordance with regulations promulgated by the Department of Environmental Conservation (DEC). (Stipulation ¶ 28)

Al Turi also owns a 106 acre parcel of land which is contiguous to the Sanitary Landfill (Contiguous Parcel). (Stipulation ¶ 9) Al Turi purchased this parcel for the sole purpose of using it as a sanitary landfill when the existing Landfill is filled to capacity and closed. (Stipulation ¶ 30) The new facility (Proposed Sanitary Landfill) would continue the business presently carried on by Al Turi at its existing facility. This would include the continuation of Al Turi's agreements with carters who transport to the Landfill solid waste from both inside and outside the State of New York. (Stipulation ¶ 37)

---

1. A sanitary landfill is defined under 40 C.F.R. § 240.101 as a land disposal site employing an engineered method of disposing of solid wastes on land in a manner that minimizes environmental hazards by spreading solid wastes in thin layers, compacting solid wastes in the smallest practical volume and applying compacting cover material at the end of each operating day (Tr. 9, 36).

2. In 1976, the Town Board prohibited Al Turi from accepting refuse originating outside of Orange County. Stipulation ¶ 26. In 1979, the New York State Supreme Court, County of Orange, held that this prohibition was violative of the Commerce Clause. Stipulation ¶ 27; Joint Exhibit D. Al Turi then continued to accept refuse originating outside of New York.

The design of the Proposed Sanitary Landfill is "state of the art," i.e., it utilizes the latest available technology (Joint Exh. F; Tr. 48–49). Defendants have not contradicted plaintiff's lengthy testimony and detailed evidence showing that if built and operated as designed, the Proposed Sanitary Landfill will be environmentally safe.

Approximately six months of actual construction are necessary before the Proposed Sanitary Landfill would be able to receive its first load of refuse, although construction could be completed more quickly at a greater cost if an accelerated schedule were put into effect (Tr. 51–52). The significance of this time period is that the existing facility is due to be closed within the next several months. Al Turi claims that if it is not allowed to immediately begin construction of the Proposed Sanitary Landfill, it will suffer irreparable harm in that it will have no place to deposit refuse, its customers will have to go elsewhere, and Al Turi will be forced out of business (Tr. 91).

*The New York State Department of*

*Environmental Conservation Permit*

Pursuant to the New York State Environmental Conservation Law (ECL), N.Y. Envir.Conserv.Law § 27–0703(1) (McKinney), the DEC promulgated rules and regulations setting forth the environmental and other requirements for solid waste management facilities. A permit to construct and operate such a facility, required under § 27–0707(1) of the ECL, can be issued only if the facility has been determined to be in compliance with the standards of operation set forth in the DEC regulations. (Stipulation ¶ 39)

Article 70 of the ECL and the DEC's rules and regulations provide for a detailed procedure for applications to construct and operate solid waste management facilities. These procedures include submission to the DEC of detailed plans, preparation of a Draft Environmental Impact Statement and public adjudicatory hearings. (Stipulation ¶ 41)

In 1981, Al Turi applied to the DEC for approval to continue operation of its existing Sanitary Landfill and to operate the Proposed Sanitary Landfill on the Contiguous Parcel when the existing Landfill becomes filled. The DEC held adjudicatory proceedings on Al Turi's application in which the Town, through its attorneys, participated. (Stipulation ¶¶ 42 & 43) In February, 1981, the DEC rendered a decision which granted Al Turi's application. In May, 1981, the DEC issued a permit to Al Turi, subject to twenty-two special conditions, to: 1) continue to operate the present Landfill until it is filled; 2) close that Landfill when filled in an environmentally sound manner; and 3) construct and operate a sanitary landfill on the Contiguous Parcel. (Stipulation ¶ 46; Joint Exhibits I–1 & I–2)

*The Ordinance*

Several months after the DEC rendered its decision, defendants held a public hearing to consider the enactment of the Ordinance being challenged here. Al Turi, by its counsel, participated fully in this hearing. Immediately thereafter, on May 21, 1981, the Ordinance was enacted. (Stipulation ¶¶ 48–50)

Sections 80–9(b), (c) and (d) of the Ordinance[3] set forth the criteria for the is-

---

3. Section 80–9(B) states:
   "B. Additional criteria applicable only to construction permits for proposed facilities.
     (1) No permit shall be issued for the construction of a solid waste management facility unless such facility contains not less than ten (10) and not more than fifty (50) acres of land."
   Section 80–9(C) states:
   "C. Additional criteria applicable only to construction permits for certain modifications to a facility.
     (1) No permit shall be issued for the modification of a solid waste management facility

which is to consist of either of the acts set forth in subparagraphs (i) or (ii) of Section 80–7, C(1)(b) of this Chapter, if the modified facility, including the existing facility, will contain more than fifty (50) acres of land. The acts set forth in subparagraphs 80–7 C(1)(b)(i) and (ii) referred to in Section 80–9(C) are as follows:
     "(i) Expansion of the facility by the acquisition, by purchase, lease or otherwise of additional land which has not been the subject of any application under this Chapter.
     (ii) Movement of the disposal operation to a portion of the property already owned,

suance by the Town Board of a permit to construct a new solid waste management facility or to modify an existing facility. In short, these sections provide that no permit may be issued to a sanitary landfill which contains less than 10 or more than 50 acres of land. If an existing facility is expanded to more than 50 acres, it is considered a "modified facility," which falls with the purview of this proscription. (Stipulation ¶ 61) Additionally, the Ordinance sets a maximum acreage limitation of 300 acres in the Town for all existing and closed landfills.

As Al Turi currently operates a 43.6 acre landfill, the Town of Orange operates a 244 acre landfill, and there is a 7–8 acre closed private landfill, only 6 additional acres can ever be used for a landfill within the Town. (Stipulation ¶¶ 56–58) Further, because the Ordinance requires that a new landfill be at least 10 acres, these 6 acres could only be used to expand an existing landfill to a maximum of 50 acres. (Stipulation ¶ 59) A 6 acre expansion of an existing facility would not be profitable. (Tr. 43–49; 126)

When defendants formulated and enacted the acreage limitations of the Ordinance, they were fully aware of the foregoing facts. (Tr. 121–24). Further, they knew that Al Turi's Landfill was almost filled to capacity, that Al Turi intended to use the Contiguous Parcel to construct a new sanitary landfill, and that such construction would be prohibited by the Ordinance. (Stipulation ¶ 63) In fact, by enacting the Ordinance, the Town Board sought to ensure that there would be no more sanitary landfills in the Town. (Tr. 137)

The stated purpose of these acreage limitations is to promote a "clean, wholesome and attractive environment" for the health and safety of the inhabitants of the Town (Joint Exhibit L p. 1) In enacting the Ordinance, the Town Board took into consideration the desire of the community to have a clean atmosphere, as well as the fact that the Town already contained two large regional landfills. (Tr. 115–17) It also considered the zoning classifications of properties in the neighborhood surrounding the Proposed Landfill and the impact the Proposed Landfill would have on the orderly development of the surrounding properties in accordance with their zoning classifications. (Tr. 115–17) These properties are primarily zoned for residences, agricultural uses, industrial parks, industries and local businesses. (Joint Exhibits B & C)

Sections 80–16, 80–17 and 80–18 of the Ordinance [4] provide, respectively, for a

---

leased or otherwise held by such person, but which has not been the subject of any application under this Chapter."
Section 80–9(d) states:
"D. Limitation on Town land area used for solid waste management facilities purposes.
(1) Notwithstanding anything to the contrary contained in this section, no permit shall be issued for the construction of solid waste management facilities or the modification to such a facility, if the amount of land comprising the proposed or modified facility when added to land comprising all other existing and closed solid waste management facilities within the Town of Goshen shall exceed three hundred (300) acres.

4. Section 80–16 of the Ordinance provides that: "The fee for a permit to construct and operate a solid waste management facility or a modification to an existing facility shall be five thousand dollars ($5,000), said fee to be paid by the applicant to the Town at the time of the submission of an application for such permit, pursuant to Section 80–7 of this Chapter. Such fee shall be applied by the

Town Board to the expense incurred by the Town in reviewing the application for compliance with this Chapter, in conducting any proceedings and hearings thereon required by this Chapter and in inspecting the construction for compliance with the approved plans. If such expense is less than the amount of the fee, the difference shall be refunded to the applicant. The fee required hereunder shall be in addition to any fees imposed by the Town for the issuance of any building permits for the construction of any structures within the facility.
Section 80–17 of the Ordinance provides that: "The fee for a permit to operate an existing solid waste management facility and for the renewal of any such permit shall be one thousand dollars ($1,000), said fee to be paid by the applicant to the Town at the time of the submission of an application for such permit, pursuant to Section 80–7 of this Chapter. Such fee shall be applied by the Town Board to the expense incurred by the Town in reviewing the application for compliance with this Chapter and in conducting any proceed-

$5,000 fee to construct and operate a new facility, a $1,000 fee to operate an existing facility and a $.25 per ton inspection fee for all new and existing facilities. The first two fees are to be applied by the Town Board to the cost of reviewing applications and conducting any proceedings or hearings thereon. If this cost is less than the amount of the fee, the Ordinance requires that the Town refund the difference to the applicant.

Finally, the Ordinance requires that applications for a permit to construct or operate a sanitary landfill must be submitted on forms provided by defendants. Notwithstanding Al Turi's requests, defendants have not promulgated such forms. (Stipulation ¶ 64) This is due to defendants' belief that as the Ordinance prohibits the construction of the facility for which Al Turi is seeking a permit, the promulgation of an application form would be a meaningless exercise.

*Discussion*

### The Commerce Clause

■ Al Turi claims that both the acreage limitations and the fee provisions of the Ordinance violate the Commerce Clause by discriminating against interstate commerce.[5] With respect to the acreage limitations, Al Turi states that it is prohibited from constructing the Proposed Sanitary Landfill because the Ordinance allows only six more acres of land in the Town to be used for a sanitary landfill. Defendants, while conceding that this is true, argue that a flat acreage limitation, applicable to interstate and local businesses alike, does not

run afoul of the Commerce Clause. This court agrees.

In *City of Philadelphia v. New Jersey*, 437 U.S. 617, 623, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978), the Supreme Court laid to rest any doubts about whether the interstate movement of solid waste was commerce within the meaning of the Commerce Clause. After finding that it was, the Court struck down a New Jersey statute which prohibited the importation of solid or liquid waste which originated or was collected outside of that state. What was impermissible about the law at issue was that it imposed on out-of-state commercial interests the full burden of conserving the state's remaining landfill space. 437 U.S. at 628, 98 S.Ct. at 2537. The Court was careful to emphasize, however, that:

> [I]t may be assumed as well that New Jersey may pursue those ends [i.e. environmental protection] by slowing the flow of *all* waste into the State's remaining landfills, even though interstate commerce may incidentally be affected.

437 U.S. at 626, 98 S.Ct. at 2536 (emphasis in the original).

■ This statement was in keeping with prior Commerce Clause cases upholding evenhanded state legislation which incidentally affected interstate commerce. In *Head v. New Mexico Board of Examiners,* 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), the Court sustained the application to out-of-state advertisers of a statute forbidding all price advertising of optical goods, because the ban fell equally upon citizens and non-citizens of the enacting

---

ings or hearings thereon. If such expense is less than the amount of the fee, the difference shall be refunded to the applicant.

Section 80–18 of the Ordinance provides that: "For the purpose of reimbursing the Town for its expense in inspecting the operation of a solid waste management facility for compliance with this Chapter and any permit issued hereunder, the operator of any such facility shall pay the Town a fee of twenty-five cents ($.25) for each ton of solid waste disposed of or deposited at such facility. Such fee shall be paid on the tenth day of each month computed on the amount of solid waste disposed of or deposited at such facility during the preceding month. If the operator shall

fail to pay such fee when the same becomes due, the Town Board may revoke the operation permit for such facility in the manner provided in Section 80–22 of this Chapter."

5. The Ordinance was enacted under §§ 130, 261 & 262 of the Town Law of the State of New York and § 10, subdivision 1 of the Municipal Home Rule Law of the State of New York. Thus, like other local legislation, it was enacted in the exercise of a delegation of State authority. For purposes of the Commerce Clause and the Fourteenth Amendment, it therefore stands on the same footing as though the State legislature had enacted it.

state. It held that "[a] state law may not be struck down on the mere showing that its administration affects interstate commerce in some way." 347 U.S. at 428, 83 S.Ct. at 1762. Absent discrimination against interstate commerce, where a state statute is addressed to the protection of the public health and welfare, the law may constitutionally stand. *Id.*

To the same effect is *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). There, a corporation engaged in operating federally licensed steam vessels in interstate commerce sought to enjoin the enforcement of a City Smoke Abatement Code under which the corporation's steam vessels could not continue to operate without undergoing expensive structural changes. The Court rejected the plaintiff's arguments that the City could not regulate more stringently than the federal government and that the Code impermissibly burdened interstate commerce. 362 U.S. at 443, 80 S.Ct. at 815. It reiterated its prior holdings that state regulation, based on the police power, which does not discriminate against interstate commerce, does not violate the Commerce Clause. 362 U.S. at 448, 80 S.Ct. at 818.

The cases relied on by Al Turi which found state regulations violative of the Commerce Clause, in contrast to *Head, Huron Portland Cement Co.* and the instant case, all involved legislation directly aimed at interstate commerce. *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) concerned a statute prohibiting the export of minnows seined or procured within the state. As it was directed only at interstate commerce, it was held violative of the Commerce Clause. In *Lewis v. B.T. Investment Managers, Inc.,* 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980), a Florida statute prohibited out-of-state banks, trusts and bank holding companies from owning certain businesses within the state. The statute was held unconstitutional because it overtly prevented all foreign enterprises from operating in the local market. The Court took great care in distinguishing its prior holding in *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57

L.Ed.2d 91 (1978), where a state statute was upheld because it flatly prohibited *all* producers and refiners of petroleum products from operating retail services within the state.

Al Turi's reliance on *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), is likewise misplaced. In *Pike,* the Supreme Court held violative of the Commerce Clause an Arizona statute which required all canteloupes grown in that state and offered for sale to be packed in standard containers. In so holding, the Court laid down the following test:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits ... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

397 U.S. at 142, 90 S.Ct. at 847 (citations omitted). After noting that the Court had historically viewed with suspicion statutes such as the one in *Pike* which required business operations to be performed within the home state, the Court found that the only purpose of the legislation under attack was to enhance and protect the reputation of growers within Arizona. 397 U.S. at 143, 90 S.Ct. at 848. It emphasized that the statute might have been upheld if a more compelling state interest were involved. 397 U.S. at 146, 90 S.Ct. at 849. In *Pike,* however, unlike here, the state's interest was "minimal at best."

■ What thus emerges are two fundamental principles of Commerce Clause construction. First, the absence of discrimination or disparate treatment between interstate and local businesses will usually negate a finding that a state regulation vio-

lates the Commerce Clause. Second, even-handed state legislation designed to protect the public health, safety or welfare is generally upheld, notwithstanding an incidental effect on interstate commerce. Guided by these principles, the conclusion is inescapable that the Ordinance challenged by Al Turi may constitutionally stand.

■ The most significant factor leading to this conclusion is that the Ordinance is not directed towards landfills that accept refuse originating outside of the Town or the State. Rather, it is a non-discriminatory, across-the-board limitation on the construction or expansion of all landfills within the Town. *Cf. Dutchess Sanitation, Inc. v. Plattekill,* 51 N.Y.2d 670, 417 N.E.2d 74, 435 N.Y.S.2d 962 (1980) (Ordinance prohibiting the dumping of waste originating outside of the Town held violative of the Commerce Clause). Had a local business which accepted only in-state refuse sought to construct a new fifty-acre sanitary landfill, it, too, would have been prohibited from doing so under the terms of the Ordinance. The Town here seeks to slow the flow of *all* waste, regardless of origin, into its borders.

Additionally, Goshen's interest in limiting the number of acres in the Town which are used for sanitary landfills cannot be characterized as insubstantial. *See City of Philadelphia v. New Jersey, supra,* 437 U.S. at 630, 98 S.Ct. at 2539 (Rehnquist, J., dissenting) (landfills present "extremely serious health and safety problems"). Although the Town has not contradicted the evidence offered by Al Turi that the Proposed Sanitary Landfill will be environmentally safe, the DEC decision itself indicates that even a safe landfill is not problem free. Notwithstanding its state-of-the-art design, the Proposed Sanitary Landfill can be expected to produce some amount of leachate, a noxious and highly polluted liquid which frequently pollutes ground and surface waters. Specifically, the DEC decision notes that the Proposed Landfill could have an impact on the groundwater between the boundary of the Landfill and the Wallkill River. (Joint Exh. F)

Further, the Town Board, in enacting the Ordinance, took into consideration the impact which the Proposed Sanitary Landfill would have on the orderly development of the surrounding properties in accordance with their zoning classifications. As stated in the DEC decision, the presence of a landfill and its attendant operations "causes adverse social impacts in the neighborhood, creates noise, odor, litter, dust and heavy truck traffic ..." (Joint Exh. F) These factors would no doubt have a negative impact on the properties surrounding the site of the Proposed Sanitary Landfill.

Finally, by limiting the number of acres which could be used for landfills in the Town, the Town Board sought to promote "a clean and attractive environment for its citizens." (Joint Exh. L, p. 1). It sought to maintain an aesthetic appearance in the Town which would comport with the "historic community" of Goshen (Tr. 115). This interest, together with those discussed above, is by no means *de minimis.* Accordingly, because the Ordinance is non-discriminatory and because the Town Board's interest in limiting the number of landfill acres in the Town is substantial, Al Turi's Commerce Clause attack must fail.

Having determined that the Town is entitled to prevent the construction of the Proposed Sanitary Landfill, it is unnecessary to decide the constitutionality of the $5,000 fee imposed on new facilities. With respect to the other two fees challenged by Al Turi, as long as the charges are neither discriminatory against interstate commerce nor excessive in relation to the costs incurred by the Town, they will pass constitutional muster. *Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.,* 405 U.S. 707, 717, 92 S.Ct. 1349, 1355, 31 L.Ed.2d 620 (1972); *Capitol Greyhound Lines v. Brice,* 339 U.S. 542, 544, 70 S.Ct. 806, 807, 94 L.Ed. 1053 (1950); *Metropolitan D.C. Refuse Haulers Ass'n. v. Washington,* 479 F.2d 1191 (D.C. Cir.1973) (license fee of $5.00 per ton of solid waste disposed in district upheld).

■ The $1,000 operating fee imposed on existing facilities applies to interstate and local businesses alike without discrimina-

tion. Further, the Ordinance specifically provides that if the cost of inspection is less than $1,000, the Town must refund the difference to the operator of the facility. The fee is thus non-discriminatory and non-excessive in accordance with the mandate of the Commerce Clause.

The $.25 per ton inspection fee, while non-discriminatory, is somewhat more troublesome. The testimony at trial revealed that at Al Turi's present level of operations, the fee would amount to approximately $70,000 per annum. Although defendants attempted to justify this amount, this court is not at all convinced that the charge is not excessive in relation to the cost incurred by the Town.

There is, however, no indication that the Town intends to collect this fee with respect to Al Turi's *existing* facility. Absent such an indication, a determination of the fee's constitutionality as applied to Al Turi would be premature.

*The Fourteenth Amendment*

Al Turi also argues that the provisions of the Ordinance discussed above violate the due process provisions of the Fourteenth Amendment.[6] In order to prevail on this claim, Al Turi must show that the Ordinance bears no rational relation to a valid local objective. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978); *Koch v. Yunich,* 533 F.2d 80, 84 (2d Cir.1976). For the reasons discussed in the Commerce Clause portion of this opinion, this court has no hesitancy in concluding that Al Turi has not proven its Fourteenth Amendment claim.

Al Turi's argument is twofold. First, it suggests that because the DEC issued a permit for the Proposed Sanitary Landfill, the Town's refusal to allow its construction must be considered arbitrary and irrational. Second, it claims that there is no rational basis for limiting to 300 the number of acres within the Town which can be used for solid waste disposal. In response, de-

fendants claim that the imposition of acreage limitations represented a proper and legitimate exercise of the Town's police power.

■ Al Turi's claim that the granting of a permit by the DEC rendered a contrary decision by the Town irrational flies in the face of the statute under which the DEC acted. New York's Environmental Conservation Law, by its express terms, disclaims any state purpose to supersede or preclude the enactment of local ordinances regulating solid waste disposal. Indeed, the statute specifically contemplates the inclusion of local government in the planning and control of problems endemic to waste management. *Monroe-Livingston Sanitary Landfill, Inc. v. Caledonia,* 51 N.Y.2d 679, 417 N.E.2d 78, 435 N.Y.S.2d 966 (1980). Consequently, the mere fact that a local entity prohibits that which the DEC permits can not be considered irrational or arbitrary.

■ Al Turi's claim that the acreage limitations bear no rational relation to any valid local objective must similarly fail. As discussed above, the Town Board's interest in limiting the number of landfill acres in the Town was substantial. The enactment of the Ordinance represented a reasonable exercise of the Town's authority to protect the health, safety and well-being of its citizens through the exercise of the police power. Al Turi's assertion that a flat acreage limitation was not the *best* way of dealing with the problems associated with landfills rests simply on an evaluation of the economic wisdom of the legislation, which cannot override the Town's authority to legislate against what it views as evils in its local affairs. *Exxon Corp. v. Governor of Maryland, supra,* 437 U.S. at 124, 98 S.Ct. at 2213. Accordingly, because the acreage limitations bear a rational relation to a valid local objective, Al Turi's due process claim must be rejected.

---

**6.** Al Turi also argued that the challenged provisions of the Ordinance violated the Fifth Amendment to the United States Constitution. As there is no claim of governmental action necessary to support a Fifth Amendment claim, however, this argument is not considered further.

The same conclusion is compelled with respect to the fee provisions of the Ordinance. Again, as there is no indication that the Town intends to collect the $.25 per ton inspection fee on the existing facility, and as the $5,000 fee for new facilities is rendered inapplicable by this decision, only the $1,000 fee will be considered. This fee, imposed for the purpose of reimbursing the Town for expenses incurred in reviewing applications for continued operations, can hardly be considered arbitrary or irrational, particularly in light of the fact that the Ordinance mandates a refund to the applicant in the event that the expenses incurred are less than $1,000. Under these circumstances, it cannot be said that the fee is unreasonable or deprives Al Turi of its money or property without due process of law.

In sum, Al Turi has failed to prove its claim that the challenged provisions of the Ordinance violate either the Commerce Clause or the Fourteenth Amendment. It is thus unnecessary to decide whether Al Turi will suffer irreparable harm as a result of the implementation of the Ordinance. Accordingly, Al Turi's request for declaratory and injunctive relief is denied.