**DIAMOND WASTE, INC., Plaintiff,**

v.

**MONROE COUNTY, GEORGIA, et al., Defendants.**

**Civ. A. No. 89–380–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 22, 1990.

L. Robert Lovett, Macon, Ga., for plaintiff.

John C. Daniel, III, Macon, Ga., and W. Franklin Freeman, Jr., Forsyth, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

The City of Forsyth, Georgia, in Monroe County, owns a sanitary landfill which is situated within Monroe County, but outside of the city limits of Forsyth. Until the end of 1989, the landfill was used to receive garbage generated from within the City of Forsyth and Monroe County, with the City and County governments sharing the costs of operation. In 1989, unhappy with the cost of operating the landfill, the City decided to end its operating arrangement with Monroe County and to contract with Diamond Waste ("Diamond") to operate the landfill. Pursuant to the contract, Diamond would dispose of all residential waste generated from within the city limits of Forsyth at no cost. The contract also gave Diamond the right to receive waste from others—intrastate and interstate customers—charging them on a per ton basis. In addition, Diamond would pay to the City the sum of one dollar per ton for each ton of waste disposed of at the landfill except for the waste generated at personal residences located within the City and at city-owned property located within the City. Under this contract Monroe County would have to pay Diamond in order to deposit its waste in the landfill. Unhappy with this arrangement, Monroe County objected to Diamond's intentions to operate the City's landfill as a regional landfill—that is, to receive waste from outside of the County and from outside the State of Georgia. The County's authority to object comes from a law of the State of Georgia which provides:

> No person, firm, corporation, or employee of any municipality shall transport, pursuant to a contract, whether oral or otherwise, garbage, trash, waste, or refuse across state or county boundaries for the purpose of dumping the same at a publicly or privately owned dump, unless permission is first obtained from the governing authority of the county in which the dump is located and from the governing authority of the county in which the garbage, trash, waste, or refuse is collected.

O.C.G.A. § 36–1–16.

On November 7, 1989, plaintiff Diamond Waste, filed the above-captioned suit for declaratory judgment. Diamond asks this court to enter a declaratory judgment declaring O.C.G.A. § 36–1–16 unconstitutional as violative of Diamond's constitutional commerce clause right to engage in interstate commerce without discriminatory intervention by defendants in the above-captioned matter (Monroe County). Defendants argue that the application of the statute in this case is not discriminatory because it applies evenly to all intrastate garbage from all Georgia counties other than Monroe as well as to interstate garbage from other states. Defendants also argue

that the statute is not in violation of the commerce clause because it does not operate to close all of the State of Georgia's landfills to out-of-state garbage; it is being selectively applied just to this particular landfill.

Although the City of Forsyth is not a party to this lawsuit, the City and Diamond are defendants in a lawsuit filed by Monroe County in the Superior Court of Monroe County concerning operation of this landfill. Counsel for the City of Forsyth, Mr. C. Robert Melton, has been present at conferences and hearings throughout the proceedings before this court; and Mr. Melton has, in fact, been served by the County with copies of pleadings in the suit before this court. Although not a party to this suit, the City of Forsyth clearly is an interested party.

Under the facts of the present case, the landfill in question is owned by the City of Forsyth. Before being transferred to Diamond Waste, the solid waste handling permit for the landfill was listed in the name of the City of Forsyth; not in the name of the County. City of Forsyth employees performed the duties of daily operation and control of the landfill, although county personnel were responsible for digging trenches when necessary. The City and County, under a contract which by its terms was to expire on December 31, 1981, divided the costs of operation of the landfill with the City to pay one-third of the cost and the County to pay two-thirds. Although the contract was not formally renewed, the City and County continued to operate under its terms up until the time of the present dispute. Under this arrangement, the Superior Court of Monroe County found that Monroe County had an interest in the landfill pursuant to an implied contract with the City and that this contract would continue through midnight, December 31, 1989, "at which time the contract between the County of Monroe and the City of Forsyth shall cease to exist."

The City of Forsyth now wishes for Diamond Waste to operate the landfill and has entered into a contract with Diamond providing for Diamond to do so in order to provide its residents with a landfill. The City entered the contract with Diamond after determining that the City could no longer economically and properly operate the existing landfill, or open and economically and properly operate a new landfill due to the low volume of waste generated from within Monroe County. Diamond Waste has experience in landfill construction, management, and operation in the State of Georgia. Mr. Robert Mullis, president of Diamond Waste, testified that the volume of waste available from within Monroe County "simply will not support the proper operation of the landfill, based on any reasonable tipping fee." Mr. Mullis also stated that if he were limited to accepting only waste generated from within Monroe County, the citizens would have to pay a tremendous and very burdensome price per ton of waste, or Diamond would have to "cut back on operations or stop them completely." Mr. Mullis' conclusions are based upon feasibility studies performed by professional engineers.

Mr. Steve Harbin, manager of the solid waste division at the engineering firm of Tribble and Richardson testified that his firm performed a cost analysis to determine the costs of operating the landfill in question. Mr. Harbin explained that the waste stream is one of the factors in the cost analysis, and that the daily waste stream currently being generated from within Monroe County is between forty and fifty tons per day. Mr. Harbin then explained that in performing the cost analysis, all the different costs of operation are added up and then divided by the waste stream. He further testified that "if you use only fifty tons per day, the costs come out somewhat prohibitive." When asked if the increased flow of waste into a landfill would shorten its life, Mr. Harbin stated that the life may be shortened depending on how the site is operated. He further stated that with better equipment and with an operator using better techniques, more waste can be put into a smaller space and can be covered with less soil.

Mr. Mullis testified that Diamond Waste has received two offers from out-of-state companies offering to contract with Dia-

mond to deliver a combined 180 tons of waste daily to the landfill, but he has not accepted the offers because of the current dispute with the County. The contract between the City of Forsyth and Diamond specifies that under no circumstances shall the landfill accept hazardous waste from any source. By letter of counsel of October 25, 1989, Monroe County declared its intention, set forth in a resolution passed by the board of commissioners, to "block the transportation of waste into Monroe County from other counties and sources outside Monroe County" and further, "expressly refused to grant any permit or authorize in any way the creation of a Regional Landfill which would allow Diamond Waste Management, Inc. to bring any garbage or waste into Monroe County from outside of Monroe County." At the November 7, 1989 meeting of the Board of Commissioners of Monroe County, Mr. Mullis presented three proposals to the board for Diamond to handle Monroe County's waste. However, the board rejected all three proposals because they all entailed a regional landfill, and indicated that for a proposal to be acceptable, it must not be a regional landfill. The board then decided to discuss possible litigation concerning the landfill.

Monroe County is currently proceeding to acquire and open its own landfill in Monroe County. While in the process of opening its own landfill, Monroe County is currently transporting its waste across county lines to be disposed of in the Crawford County landfill.

Plaintiff relies heavily upon the case of *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), in which the Supreme Court held that the interstate movement of waste is "commerce" within the meaning of the Commerce Clause and that such articles of commerce from out of state may not be discriminated against unless there is some reason, apart from their origin, to treat them differently. Plaintiff also relies upon the case of *Shayne Bros., Inc. v. Prince George's County Maryland*, 556 F.Supp. 182 (D.Md.1983), in which the court concluded that the *City of Philadelphia* case

was dispositive in holding unconstitutional a statute which required a grant of authority from the "Counsel and County Executive" in order to "transport from without the State trash or refuse to a dump or landfill within this County". The court in *Shayne Bros.* cites the case of *Browning–Ferris, Inc. v. Anne Arundel County*, 292 Md. 136, 438 A.2d 269 (1981), in which the Maryland Court of Appeals found the *City of Philadelphia* case to be dispositive and concluded that "the County may not attempt to avoid what amounts to a problem of state and national scope by cutting itself off from the rest of the country."

Defendants rely heavily upon the case of *Evergreen Waste Systems v. Metropolitan Service District*, 820 F.2d 1482 (9th Cir. 1987), in which the court upheld the constitutionality of an ordinance of a three county district ("Metro"), barring out of district waste from a landfill owned and operated by the district. The Ninth Circuit held the local ordinance in question was not a per se violation of the Commerce Clause under the *City of Philadelphia* case because the ordinance applies to only one of Oregon's many landfills and also bars waste from most Oregon counties as well as that from out of state; therefore, it is not "a law that overtly blocks the flow of interstate commerce at a State's borders." Upon finding the absence of such an obvious barrier to interstate commerce the court further found that the ordinance did not violate the Commerce Clause because the ordinance regulates evenhandedly between out-of-state waste and most Oregon waste; the ordinance serves a legitimate local public purpose of extending the useful life of the landfill; and, the burden the ordinance places on the interstate shipment of waste is minimal in relation to the legitimate local purpose.

Defendants also rely upon the case of *Waste Aid Systems, Inc. v. Citrus County*, 613 F.Supp. 102 (M.D.Fla.1985), which under Commerce Clause analysis, upheld the constitutionality of a county's ban on acceptance of out-of-county waste at a county-owned and operated landfill. In *Waste Aid*, the court distinguished *City of*

*Philadelphia* in that the county in *Waste Aid* did not forbid the transportation of out-of-county waste across its borders or the deposit of out-of-county waste at any other landfill in the county except the particular one involved in that case. The court also found that the purpose of the ban, to ensure the availability of a landfill for its citizens, was a legitimate public purpose and that the ban is a rational means of achieving that goal.

The case of *Shayne Bros., Inc. v. District of Columbia,* 592 F.Supp. 1128 (D.D.C.1984), is another case in which the *City of Philadelphia* case was distinguished. In *Shayne Bros.,* the court held not to be violative of the Commerce Clause a local regulation prohibiting the disposal of waste generated outside the District in "any of the disposal facilities operated by the District unless prior arrangements for acceptance have been made with the Commissioner." The court stated that the *City of Philadelphia* case was decided in the context of an action by operators of *"private"* landfills and their customers in other states. The court noted, however, that under the facts of *Shayne Bros.* the District was a "market participant" in operating its own landfill and that "the fact that the District has accomplished by an ordinance what it might have done by contract (or, for that matter, by simply exercising its landowner's prerogative to bar entry) does not alter the essence of its act."

The cases set forth above, upon which defendants rely, are distinguishable from the facts before this court in that all three of these cases concerned landfills owned and operated by the governmental entities seeking to bar outside waste from their landfills. Monroe County neither owns nor operates the landfill that is the subject matter of the present lawsuit. Furthermore, under the decision of the Superior Court of Monroe County, any interest the County may have had in the landfill ceased to exist on December 31, 1989. The owner of the landfill, the City of Forsyth, does not seek to bar waste generated outside of Monroe County and has even granted Diamond permission to accept waste from sources outside of the County in order to

be able to provide its citizens with continued waste disposal at an affordable cost. Additionally, in all three of these decisions upon which defendants rely, the courts considered it important that the bans being attacked applied only to the particular landfills in question in each of the cases. However, in the present case, the letter from defendants' counsel of October 25, 1989, concerning the resolution passed by the board of commissioners, shows defendants' intention to absolutely prohibit operation of a regional landfill not only at the site of the present landfill but also at any other location in Monroe County. This court finds that the facts of the case at hand are more closely analogous to the facts of the cases upon which Diamond Waste relies. Therefore, the court finds that O.C.G.A. § 36-1-16 as applied by defendants unconstitutionally violates the Commerce Clause.

Defendants' cite *Evergreen Waste Systems* for the proposition that, in the absence of an obvious barrier to interstate commerce, the court should proceed to a three-part test to determine whether the statute violates the Commerce Clause. Part two of this three-part test requires the finding of a "legitimate local purpose" and the county asserts as its legitimate local purpose, the purpose of extending the useful life of the landfill. However, the court notes that any interest the county had in the present landfill ended December 31, 1989; therefore, it has no interest in the landfill to protect. The court further notes that the City of Forsyth does have a legitimate local interest of providing its citizens with waste disposal and that the City has determined, after thorough investigation, that the best way to provide for this interest is to allow Diamond to operate the City's landfill pursuant to the terms of the contract negotiated with Diamond Waste. Additionally, now that the County is no longer using the city-owned landfill and is in the process of developing its own landfill to provide waste disposal for county residents, the County has no legitimate reason to interfere with the City's choice of how to best run its landfill.

Accordingly, this court DECLARES that O.C.G.A. § 36–1–16 as applied by defendants in this case unconstitutionally offends the Commerce Clause of the United States Constitution.[1]

The court will now address the issue of the issuance of a permanent injunction. "To be entitled to permanent injunctive relief from a constitutional violation, a plaintiff must first establish the fact of the violation. He must then demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law." *Newman v. Alabama,* 683 F.2d 1312 (11th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). In the discussion above, this court's declaration of the unconstitutionality of defendants' application of O.C.G.A. § 36–1–16 clearly establishes the fact of the constitutional violation. Because of the sovereign immunity of the County, plaintiff lacks an adequate remedy at law. Consequently, because of this inadequate remedy at law, the nonissuance of injunctive relief would expose plaintiff to continuing irreparable injury. In light of the County's actions and stated intentions, and the threat the County poses to the operation of Diamond's business and to the City's ability to provide waste disposal to its citizens, this court feels that injunctive relief is particularly appropriate in the above-captioned matter. Therefore, the requirements for permanent injunctive relief from a constitutional violation having been met, the court permanently ENJOINS defendants from interfering with Diamond's operation of the landfill through the unconstitutional application of O.C.G.A. § 36–1–16.[2]

SO ORDERED.

---

**1.** This court also declares unconstitutional the resolution passed by the Monroe County Board of Commissioners expressly refusing to "authorize in any way the creation of a Regional Landfill ... [in] Monroe County."

**2.** By letter of January 29, 1989, defendants' attorney, W. Franklin Freeman, Jr., stated that he "understood" that the court made a verbal ruling on defendants' motion to abstain during in-chambers conference and asked the court to make a formal ruling on the motion. The court acknowledges that Mr. Freeman's understanding is correct and hereby states that defendants' motion to abstain is DENIED.