**DIAMOND WASTE, INC.,**
**Plaintiff–Appellee,**

v.

**MONROE COUNTY, GEORGIA, Monroe County Board of Commissioners, Tommy Wilson, Jim Ham, R.T. Bunn, Larry Evans, James Long, Defendants–Appellants.**

No. 90–8298.

United States Court of Appeals,
Eleventh Circuit.

Aug. 23, 1991.

W. Franklin Freeman, Jr., James A. Vaughn, Mills, Freeman, Vaughn & Sosebee, Forsyth, Ga., Frederick L. Wright, Smith, Currie & Hancock, Atlanta, Ga., for defendants-appellants.

L. Robert Lovett, Smith, Hawkins, Almand & Hollingworth, Macon, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and KAUFMAN *, Senior District Judge.

CLARK, Circuit Judge:

This appeal raises the question of the constitutionality of Monroe County's ban on the importation of out-of-county waste. We hold that the County resolution at issue violates the commerce clause but that the Georgia statute from which Monroe County may have derived its authority to impose the ban is constitutional.

## I. BACKGROUND

Monroe County, Georgia and the City of Forsyth, located in Monroe County, jointly operated a waste disposal dump in an unincorporated area of the county for several years. Forsyth owned the land where the dump was located. Under the terms of a joint agreement, Forsyth was responsible for one-third of the operating costs, and Monroe County was responsible for the remaining two-thirds. In late 1988 or early 1989, Forsyth informed Monroe County that the dump, which was receiving approximately fifty tons of garbage daily, was reaching capacity and would need to be closed within two years at most. On September 19, 1989, Forsyth received a letter from Monroe County stating that Monroe County's engineers believed that the landfill was reaching capacity, that Monroe

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

County did not believe the landfill should continue to operate past December 26, 1989, and that Monroe County would not bear any of the expenses of closing the site. The joint landfill agreement terminated on December 31, 1989.

On October 12, 1989, Forsyth contracted with Diamond Waste, Inc., to assume the operation of the dump. Under this agreement, Diamond Waste was given permission to convert the dump into a regional landfill. Diamond Waste planned to extend the life of the landfill by using more efficient techniques and by expanding onto an unused portion of the landfill site. While Forsyth's garbage would be disposed of at no cost, Monroe County would have to pay for any garbage it wanted to dump in the landfill. The rationale for the regional landfill was that the waste generated solely within Monroe County could not support the maintenance of an environmentally safe landfill. Diamond Waste has subsequently received offers for importation of waste from out of state totalling 180 tons daily. On October 17, 1989, Diamond Waste informed Monroe County that it had taken over the operation of the landfill.

The minutes of the October 25, 1989, meeting of the Monroe County Commission reflect the following:

> Comm. Long made the following motion: "Because the City of Forsyth has attempted to breach their agreement with Monroe County regarding the current operation of the Landfill and the City of Forsyth has agreed with a private company to jointly create a Regional Landfill in Monroe County to be operated by Diamond Waste Management, Inc.;
>
> "I move that the Board of Commissioners resolve to prevent the creation of this Regional Landfill, by legal action if necessary, so that we will prevent garbage, trash, or waste of any kind from being transported into Monroe County from other counties and locations."

The resolution was unanimously passed.

The district court found that O.C.G.A. § 36–1–16,[1] gave the County authority to pass such a resolution, although we find no reference to the statute by the county commissioners. Nor does the October 25, 1989 letter from the County's attorney to the attorneys for Forsyth and Diamond Waste, discussed by the district court, make any reference to the statute. Nor do we find in the record any application from the City of Forsyth or Diamond Waste for permission to operate a dump as required by the statute. Be that as it may, we will review this case in the context of the district court's opinion.

On November 7, 1989, the president of Diamond Waste presented three proposals to the Monroe County Commissioners for the operation of the dump. These proposals were rejected because they all involved the creation of a regional landfill. Monroe County has since made arrangements with other counties for the temporary disposal of its own garbage. On the same day, Monroe County filed an action in Monroe Superior Court to enjoin Diamond Waste and Forsyth from operating a regional landfill. Later on that day, Diamond Waste filed the instant action in the district court. On December 1, 1989, the Superior Court held that section 36–1–16 was constitutional and enforceable against Diamond Waste and Forsyth. This decision was reversed on July 5, 1990, by the Georgia Supreme Court, which held that the district court's intervening ruling of unconstitutionality operated as an estoppel by judgment.[2]

On February 22, 1990, the district court held that section 36–1–16 as implicated by the Monroe County resolution was unconstitutional. Monroe County was perma-

---

1. No person, firm, corporation, or employee of any municipality shall transport, pursuant to a contract, whether oral or otherwise, garbage, trash, waste, or refuse across state or county boundaries for the purpose of dumping the same at a publicly or privately owned dump, unless permission is first obtained from the governing authority of the county in which the dump is located and from the governing authority of the county in which the garbage, trash, waste, or refuse is collected. The subsequent amendment to section 36–1–16 has no bearing on this appeal.

2. *Mayor and Alderman of Forsyth v. Monroe County,* 260 Ga. 296, 392 S.E.2d 865 (1990).

nently enjoined from interfering with Diamond Waste's operation of the dump.[3]

## II. THE CONSTITUTIONAL LAW BASICS

The Supreme Court has established the parameters of our analysis under the Constitution's commerce clause:

> The opinions of the Court through the years have reflected an alertness to the evils of "economic isolation" and protectionism, while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected. The clearest example of such legislation is a law that overtly blocks the flow of interstate commerce at a State's borders. But where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted a much more flexible approach, the general outlines of which were outlined in *Pike v. Bruce Church, Inc.* . . . .[4]

The Court's opinion in *Pike*[5] describes a test requiring a permissible regulation to operate "even-handedly," to result from a "legitimate local purpose," and to have only an "incidental" impact on interstate commerce.[6] Such a regulation "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."[7]

## III. *PER SE* INVALIDITY

■ The Monroe County resolution does not constitute sheer economic protectionism against out-of-state commerce and so is not invalid *per se.*[8] The resolution treats interstate waste and intrastate waste on an equal basis.[9] Monroe County also has legitimate legislative interests in extending the life of the only existing landfill within its jurisdiction and in protecting its residents and its environment from the increased pollution and traffic that a regional landfill would create. Indeed, many private residences are adjacent to the landfill, as are Monroe County's mental health center and an elementary school.

## IV. THE *PIKE* TEST

■ Whatever were the motives in passing the resolution, our consideration of the factors laid out in *Pike* leads us to conclude that Monroe County's resolution must be invalidated. For the reasons discussed in the previous section, we find that the resolution is applied relatively "even-handedly" and accomplishes a "legitimate local purpose." However, we are loathe to characterize the possible effects of the resolution on interstate commerce as "incidental." There was evidence that Diamond Waste had already received inquiries concerning the importation of 180 tons of waste daily from outside of Georgia. Although there is at present but one landfill in one county that would be affected by the resolution, were other counties to adopt the same reg-

3. *Diamond Waste, Inc. v. Monroe County,* 731 F.Supp. 505 (M.D.Ga.1990).

4. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 623–24, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978) (citations omitted).

5. 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

6. 397 U.S. at 142, 90 S.Ct. at 847.

7. *Id.* (citation omitted).

8. *Cf. City of Philadelphia,* 437 U.S. at 625–29, 98 S.Ct. at 2536–38 (voiding New Jersey's ban on out-of-state waste as facially violative of the commerce clause).

9. *See Evergreen Waste Sys., Inc. v. Metropolitan Serv. Dist.,* 820 F.2d 1482, 1484 (9th Cir.1987) ("Unlike New Jersey's total ban on out-of-state waste [overturned in *City of Philadelphia*], Metro's ordinance applies to only one of Oregon's many landfills and bars waste from most Oregon counties as well as out-of-state waste.").

ulation in response, the impact on interstate commerce could be substantial.[10]

Even more crucial to our decision is the fact that Monroe County could have achieved its objectives "as well with a lesser impact on interstate activities."[11] If Monroe County's goals are to preserve existing landfill space and to prevent environmental damage, these goals could be met just as effectively by less discriminatory measures. Section 36-1-16 requires "permission" from counties prior to the importation of wastes from elsewhere. The statute does not establish how counties should regulate the dispensation of their permission or what counties may request in exchange for their permission. Under the statute, Monroe County could reduce the amount of garbage deposited by setting reasonable daily tonnage limits on imported waste and granting permission to dump on a "first come, first served" basis. Or Monroe County could auction permits for dumping fixed amounts of imported waste. Or dumping rights for out-of-county garbage could be established by lottery. While this is not an exhaustive list of alternatives available to Monroe County, this list does show that Monroe County can avoid burdening interstate commerce while feasibly protecting available landfill space, its citizens, and the environment.[12]

Our decision is informed by the Supreme Court's holding in *Dean Milk Co. v. City of Madison*.[13] There, the city of Madison, Wisconsin had adopted an ordinance preventing the sale of milk that was not bottled within five miles of the city's central square. This ordinance had the effect of preventing Illinois milk suppliers from selling their milk in Madison. The Supreme Court held that Madison's objective of ensuring that the milk was produced under sanitary conditions could be met as well by having city officials inspect the milk or by relying on inspections conducted by the United States Public Health Service. The Court wrote:

> To permit Madison to adopt a regulation not essential for the protection of local health interests and placing a discriminatory burden on interstate commerce would invite a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause. Under the circumstances here presented, the regulation must yield to the principle that "one state in its dealings with another may not place itself in a position of economic isolation."[14]

Similarly, Monroe County could achieve its objectives in a less burdensome manner.[15]

We recognize that other courts have reached opposite conclusions in somewhat comparable settings.[16] Indeed, we might

---

**10.** *See Dutchess Sanitation Serv., Inc. v. Town of Plattekill*, 51 N.Y.2d 670, 676, 417 N.E.2d 74, 77, 435 N.Y.S.2d 962, 965 (1980) (invalidating similar prohibition on out-of-municipality waste; "[F]or purposes of determining the presence of effect on interstate commerce, not only the impact of a particular instance of regulation, but a projection of the cumulative burden that would result if similar regulations were adopted elsewhere is to be considered.").

**11.** *Pike*, 397 U.S. at 142, 90 S.Ct. at 847.

**12.** *See BFI Medical Waste Sys., Inc. v. Whatcom County*, 756 F.Supp. 480, 486 (W.D.Wash.1991) (reversing county's ban on importation of medical wastes; "If the [county's] objective is to provide safeguards during the transportation of medical wastes, it could address that problem directly."); *Dutchess Sanitation*, 51 N.Y.2d at 677, 417 N.E.2d at 78, 435 N.Y.S.2d at 966 ("[T]he only legitimate goal [of] protection of community health—might have been adequately effected ... through nondiscriminatory, across-the-board limitation on the quantity, type or

state of waste to be deposited or excluded."). *See generally* Comment, *Recycling* Philadelphia v. New Jersey: *The Dormant Commerce Clause, Postindustrial "Natural" Resources, and the Solid Waste Crisis*, 137 U.Pa.L.Rev. 1309, 1336–47 (1989) (discussing methods that states and municipalities can use to conserve solid waste disposal capacity).

**13.** 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951).

**14.** 340 U.S. at 356, 71 S.Ct. at 299 (citation omitted); *see also Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 376–78, 96 S.Ct. 923, 930–31, 47 L.Ed.2d 55 (1976).

**15.** *See supra* text accompanying notes 11–12.

**16.** *See Evergreen Waste*, 820 F.2d at 1485 (upholding ban on out-of-municipality waste without determining availability of less restrictive alternatives); *County of Washington v. Casella Waste Management, Inc.*, 1990 WL 208709, *4,

strike a different balance under *Pike* if Monroe County had demonstrated a more pressing need for preserving landfill space—for example, if no other landfill space within or without the county was available for Monroe County's use.[17] But under the particular circumstances at issue, the fact that less restrictive alternatives are available to Monroe County makes the burden imposed by the absolute ban clearly excessive in relation to the local benefits created.

## V. CONCLUSION

The Monroe County resolution adopted October 25, 1989, preventing Diamond Waste, Inc. from importing waste of any kind into Monroe County from other counties and other locations violates the commerce clause. The district court declared the statute under which the County passed the resolution, O.C.G.A. § 36–1–16, unconstitutional "as applied." We note that the statute is nevertheless constitutional. It permits Georgia counties to require an application for a permit from those who would bring across state or county boundaries garbage, trash, waste, or refuse for the purpose of dumping such at a publicly or privately owned dump.

We affirm the district court's decision to enjoin the County from an outright ban on the importation of waste across county and state boundaries. We vacate so much of the district court's order indicating that the County has no interest in the landfill to protect, since it is clear that the Georgia statute gives Georgia counties a role in protecting the public health and welfare with respect to the operation of waste dumps within their respective boundaries.

AFFIRMED.

1990 U.S. Dist. LEXIS 16941, *11–14 (N.D.N.Y. 1990) (same); *Bill Kettlewell Excavating, Inc. v. Michigan Dep't of Natural Resources,* 732 F.Supp. 761, 765–66 (E.D.Mich.1990) (same), *aff'd,* 931 F.2d 413 (6th Cir.1991); *cf. Swin Resource Sys., Inc. v. Lycoming County,* 883 F.2d 245, 248–55 (3d Cir.1989) (applying "market participant exception" to reject commerce clause challenge to preference given to county residents in use of county-operated landfill), *cert. denied,* — U.S. —, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); *Waste Aid Sys., Inc. v. Citrus County,* 613 F.Supp. 102, 105–07 (M.D. Fla.1985) (rejecting equal protection challenge to county's ban on dumping of out-of-county waste in county-owned landfill).

**17.** *Cf. Borough of Glassboro v. Gloucester County Bd. of Chosen Freeholders,* 100 N.J. 134, 495 A.2d 49, 55 (1985) (affirming entry of injunction barring import of waste into private landfill; "[The injunction's] purpose is to permit emergency access to [the landfill] for the protection of the health, safety, and welfare of a limited number of municipalities in the tri-county area that have no alternative means of disposing of solid waste."), *cert. denied,* 474 U.S. 1008, 106 S.Ct. 532, 88 L.Ed.2d 464 (1985).