Raymond CARPENTER, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 90–CA–1267–DG.

Court of Appeals of Kentucky.

May 1, 1992.

Rick L. Thomas, Reece, Lang & Breeding, P.S.C., Lexington, for appellant.

Chris Gorman, Atty. Gen., John S. Gillig, Stan Cox, Asst. Attys. Gen., Frankfort, for appellee.

Before LESTER, C.J., and STUMBO and WILHOIT, JJ.

WILHOIT, Judge.

The appellant, Raymond Carpenter, operates a solid waste landfill in Fleming County, Kentucky. He obtained a permit from the Cabinet for Natural Resources and Environmental Protection, but failed to comply with Fleming County Fiscal Court Ordinance No. 89–4, which required obtaining a license from the fiscal court. Mr. Carpenter was cited for his violation of Ordinance No. 89–4. After a hearing in district court, Carpenter was found guilty and fined for 56 separate violations of the ordinance. The circuit court affirmed, and this Court granted discretionary review to consider two issues: (1) whether KRS 224.033 (renumbered as KRS 224.10–100) preempts local license fees authorized by 68.178(2), and (2) whether KRS 68.178, upon which Ordinance 89–4 is based, is constitutional.

Carpenter contends that because KRS Chapter 224 grants the Cabinet for Natural Resources and Environmental Protection such comprehensive authority in regulating solid waste management facilities, local governments are preempted from exercising authority in this field. Both parties point to *Commonwealth v. Do, Inc.*, Ky., 674 S.W.2d 519 (1984), as stating the law on preemption. Like the scheme under review in *Commonwealth v. Do, Inc.*, the legislature has given the Cabinet broad authority in the regulation of solid waste in addition to granting local governing bodies authority in solid waste management. The Cabinet is the "official planning and management agency ... in the field of solid waste ... [and] shall have primary responsibility for coordinating the solid waste planning and management activities of waste management districts, counties ... and for the approval of solid waste management facilities." KRS 224.43–310(1). Chapter 224.43 contains provisions whereby local governing bodies are authorized to regulate solid waste disposal. *See, e.g.,* KRS 224.43–340 which directs each county or solid waste management district to prepare a solid waste management plan for approval by the Cabinet. Local governing bodies are not preempted from regulating solid waste management facilities. *See*

*Commonwealth v. Do, Inc.*, 674 S.W.2d at 521. Since counties may regulate solid waste facilities, it follows that KRS 68.178, which allows counties to assess license fees for solid waste landfills, is not inconsistent with Chapter 224.43. Our conclusion is bolstered by a recent amendment to KRS 224.43–310, which directs each governing body, beginning January 1, 1993, to report annually to the Cabinet regarding, among other concerns, the fees assessed and collected for solid waste management. KRS 224.43–310(5)(f).

■ Carpenter contends that KRS 68.178 violates the Commerce Clause of the United States Constitution. KRS 68.178(2) provides as follows:

(a) The fiscal court of a county or the urban-county council of an urban-county government may license a solid waste landfill located within the county or urban-county area. The license fee may be set at not less than one cent (1¢) but no more than fifty cents (50¢) per ton of waste received by the landfill or set at up to five percent (5%) of gross receipts of the landfill.

(b) The license fee as set may be increased by an amount up to one-quarter (¼) of the base fee per ton or on gross receipts of waste received at the landfill which originates from outside of the planning area. For purposes of this section, planning area shall mean those areas within Kentucky as indicated in solid waste management plans filed with the cabinet by a county, multi-county area, or waste management district. However, before a fee differential may be imposed the county or urban-county government shall demonstrate that the differential is reasonably related to additional government services which must be undertaken because of the landfilling of non-planning area waste. This demonstration may be made by showing an unplanned for reduction in waste disposal capacity and a need to provide for future disposal capacity or impacts on roads, litter control or emergency services.

Fleming County Ordinance No. 89–4, under which Carpenter was cited, stated that it was adopted, inter alia, to assure adequate solid waste disposal capacity and further stated that "the transportation of solid waste from outside the planning area will produce wear and tear on the roads of Fleming County." The county assesses an annual license fee of 5% of the actual gross receipts of the facility. For gross receipts from solid waste originating from outside the planning area, the license fee is increased an additional 1.25%.

■ Carpenter asserts that KRS 68.-178 is facially discriminatory and has a discriminatory effect on interstate commerce. A state statute which is merely an economic protectionist measure will be declared invalid per se as violative of the Commerce Clause. *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537–38, 69 S.Ct. 657, 664–65, 93 L.Ed. 865 (1949). The United States Supreme Court stated the general rule to determine whether a statute is violative of the Commerce Clause as follows:

Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. (Citation omitted.) If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970). Using this rule, the Court reviewed a New Jersey statute which banned the importation of most out-of-state liquid or solid waste. *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). Noting that its inquiry focused upon whether the statute was a protectionist measure or was directed to legitimate local concerns with incidental effects on interstate commerce, *id.*, 437 U.S.

at 624, 98 S.Ct. at 2535–36, the Court held that the statute violated the Commerce Clause both on its face and in its effect:

> [I]t does not matter whether the ultimate aim of [the statute] is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of *all* waste into the State's remaining landfills, even though interstate commerce may incidentally be affected. But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, [the statute] violates this principle of nondiscrimination.

*Id.*, 437 U.S. at 626–27, 98 S.Ct. at 2537 (emphasis original). Once a statute is shown to be discriminatory on its face or in its effect, the burden shifts to the state to demonstrate that the statute "serves a legitimate local purpose; and that this purpose could not be served as well by available nondiscriminatory means." *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986).

The test differs somewhat, however, for a revenue measure such as the one at issue in this case. "[A] state tax is not per se invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way." *Maryland v. Louisiana*, 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981). The test for whether a state revenue measure offends the Commerce Clause is set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A tax withstands Commerce Clause scrutiny if it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.*, 430

U.S. at 279, 97 S.Ct. at 1079. The appellant does not argue that his activity of operating a landfill in Fleming County is insufficiently connected with the Commonwealth of Kentucky to justify the license fee. He does, however, advance arguments relating to the other three prongs of the *Complete Auto Transit* test.

In his supplemental brief, the appellant concedes that the five percent license fee "might be justified as a health and welfare measure," thus limiting his argument to the additional 1.25 percent assessed on gross receipt from solid waste originating from outside the solid waste management planning area. Even though the increased fee applies to all solid waste originating from outside the planning area, regardless of whether it is from in-state or out-of-state, Carpenter contends the statute is facially discriminatory because it distinguishes waste based upon its origin. Carpenter's citation of *Dean Milk Co. v. City of Madison, Wis.*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951), is inapposite. In that case, the city of Madison, Wisconsin, imposed a ban on milk not pasteurized within five miles of the center of the city. The Madison ordinance "thus erect[ed] an economic barrier protecting a major local industry against competition from without the State." *Id.*, 340 U.S. at 354, 71 S.Ct. at 298. The Court, finding that the ban was an unjustified discrimination against interstate commerce, declared that the burden exceeded the need to protect local health and safety interests because "reasonable nondiscriminatory alternatives" were available. One alternative the Court suggested was for Madison to impose a tax or fee on the more distant milk by inspecting the milk sources and "charg[ing] the actual and reasonable cost of such inspection to the importing producers and processors." *Id.* at 354–55, 71 S.Ct. at 298. Fleming County's increased license fee in the instant case much more closely resembles this hypothetical charge than it does the outright ban at issue in *Dean Milk*.

Nor is this case one of sheer economic protectionism such as was effected in *Dean Milk* or *City of Philadelphia;* the Elev-

enth Circuit acknowledged as much in a case on which Carpenter relies, *Diamond Waste, Inc. v. Monroe County, Ga.,* 939 F.2d 941, 944 (11th Cir.1991). The county resolution at issue in that case, which banned the transportation of waste from outside the county into the county, was found to be evenhanded and to serve legitimate legislative interests. It was invalidated only because of the excessive burden on interstate commerce that results, under the *Pike* test, when an area " 'place[s] itself in a position of economic isolation.' " *Diamond Waste,* 939 F.2d at 945 (quoting *Dean Milk,* 340 U.S. at 356, 71 S.Ct. at 299). Fleming County's license fee, far from creating "economic isolation," merely compensates the county for the costs it incurs due to Carpenter's operations, and for other services Carpenter receives from the county incident to the privilege of operating a landfill there.

Carpenter also highlights the stated purposes of the increased license fees: "unplanned for reduction in waste disposal capacity . . . impact on roads, litter control or emergency services." He contends that these are problems created by the volume, not the origin, of the solid waste. In its supplemental brief, the Commonwealth contends that there are increased inspection and tracking problems associated with out-of-district waste. The Commonwealth also refers to road damage brought on by the importation of more distant waste, which it claims is frequently carried on "more destructive vehicles" than in-area waste. These justifications for the higher fee cannot be said to proceed merely from the volume of waste and not from its origin; nor does the appellant allege the existence of any evidence to the contrary. He merely asserts that distant waste causes no more road damage than does local waste. "It is well-established principle of constitutional law that a statute carries a presumption of constitutionality." *American Trucking Ass'n, Inc. v. Commonwealth, Transportation Cabinet,* Ky., 676 S.W.2d 785 (1984). The appellant has failed to meet his burden of establishing the falsity of the Commonwealth's justifications, and

hence the presumption in the Commonwealth's favor remains in force.

Nor does the appellant establish, as perhaps he seeks to do, that the increased license fee, under *Complete Auto Transit,* is not fairly related to benefits provided him by Fleming County or by the Commonwealth of Kentucky. By arguing that Fleming County's costs for inspection, tracking, and road repair are not fairly related in amount to the additional fee assessed him for importing out-of-area waste, Carpenter implies that courts are to make "a factual inquiry into the relationship between the revenues generated by a tax and costs incurred on account of the taxed activity, in order to provide a mechanism for judicial disapproval under the Commerce Clause of state taxes that are excessive." *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 627, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884 (1981). The United States Supreme Court has explicitly disavowed such an interpretation of *Complete Auto Transit.* Rather, the fair-relation-to-benefits requirement is satisfied "[w]hen a tax is assessed in proportion to a taxpayer's activities or presence in a State." *Id.* Therefore, where Montana's coal severance tax was figured as a percentage of the value of the coal mined from Montana, the Court found the amount of the tax "reasonably related to the taxpayer's activities . . . in the State—from which it derives some benefit such as the substantial privilege of mining coal." *Id.,* 453 U.S. at 628–29, 101 S.Ct. at 2959.

Since a taxpayer such as Carpenter, in proportion to his presence or activities within the state, receives "the advantages of a civilized society," benefits accrue to him in amounts not directly tied to the state's costs incurred on account of his activities. *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 445, 99 S.Ct. 1813, 1820, 60 L.Ed.2d 336 (1979). We therefore do not examine "the *amount* of the tax or the *value* of the benefits allegedly bestowed as measured by the costs the State incurs on account of the taxpayer's activities." *Commonwealth Edison,* 453 U.S. at 625, 101 S.Ct. at 2958 (emphasis in original). Since Fleming County's in-

creased license fee for out-of-area waste is directly in proportion to the amount of out-of-area waste the appellant imports, as mandated by KRS 68.178, the Commerce Clause requirement of fair relation to benefits is satisfied.

In a related argument, the appellant claims that KRS 68.178 is invalid, at least as applied, because "Fleming County has made no showing that legitimate local benefits flow from their use" of the statute. This argument rests on a misunderstanding of *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978). That case, decided under the *Pike v. Bruce Church* analysis, involved a Wisconsin highway safety justification that was found to be illusory in light of "overwhelmingly one-sided" evidence in the record that highway safety was not in fact promoted by the state statute. *Raymond Motor*, 434 U.S. at 447, 98 S.Ct. at 797. The evidence offered against Wisconsin's safety justification, uncontested by any credible evidence in favor of the justification, overcame the strong presumption of validity accorded state safety regulations. *Id.* *Raymond Motor* did not impose a constitutional requirement that the state make a showing that its legitimate interest is nonillusory or else face a presumption of illusoriness. Furthermore, even if that case did establish such a requirement, a state tax measure such as the license fee at issue here is not subjected to the *Pike* analysis of "legitimate local benefit." Obviously, the "benefit" of revenue derived from such a fee cannot be "illusory"; the state collects money to be used for public purposes, and so long as the *Complete Auto Transit* factors are satisfied, interstate commerce may be made to pay its fair share.

The appellant also argues, under another prong of the *Complete Auto Transit* test that the increased license fee discriminates against interstate commerce. The Ninth Circuit, in a case using the *Pike v. Bruce Church* test, has held that the requirement of "evenhandedness" is satisfied if out-of-state waste is treated the same as *most* in-state waste. *See Evergreen Waste Systems, Inc. v. Metropolitan Service Dist.*, 820 F.2d 1482, 1484 (9th Cir.1987). In that case, an ordinance barred the entry of waste into a landfill near Portland, Oregon, from outside a three-county planning area. Since most waste in Oregon was treated the same as out-of-state waste, the ordinance was found evenhanded. The burden on interstate commerce was found to be incidental in view of the fact that other landfills were available for the complainant waste haulers, albeit farther away or with higher dumping fees, in Oregon and Washington. The legitimate local public interest in preserving the useful life of the landfill outweighed this "minimal burden on interstate shipments of waste." *Id.* at 1485.

Furthermore, in *Bill Kettlewell Excavating, Inc. v. Michigan Dep't of Natural Resources*, 931 F.2d 413 (6th Cir.1991), *cert. granted,* — U.S. —, 112 S.Ct. 857, 116 L.Ed.2d 765 (1992), the Sixth Circuit found that a ban on all out-of-county waste did not discriminate against interstate commerce, again because most in-state waste was treated the same as out-of-state waste. *Id.* at 418. The burden on interstate commerce was found to be incidental and not clearly excessive as against the local benefits of "preserv[ing], protect[ing], and manag[ing] landfills with respect to disposition of the County's own solid waste." *Id.*[1] The Eleventh Circuit, too, has found a county's ban on in-county disposal of out-of-county waste to be evenhanded. *See Diamond Waste*, 939 F.2d at 944.

Carpenter does not allege any facts to support his claim that KRS 68.178 discriminates against interstate commerce on its face or in its effect, apart from the fact that he does not do business with any out-of-area waste generators who are located in Kentucky. Clearly, this business practice is one of Carpenter's own choosing and does not negate the applicability of Flem-

---

**1.** On March 30, 1992, the United States Supreme Court heard oral argument on the question of whether the statute in the *Kettlewell* case discriminates against interstate commerce within the meaning of *Philadelphia v. New Jersey*. *See* 60 U.S.L.W. 3625 (March 17, 1992). (The *Kettlewell* case was docketed in the Supreme Court as *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*.) No decision has been rendered at the time of this writing.

ing County's out-of-area fee to any waste from Kentucky he *might* choose to import. Private parties cannot engineer Commerce Clause violations by voluntarily "gerry-mandering" their business activities; if such were possible, a complainant could force a violation under a license fee scheme that was not higher for out-of-area waste, by simply choosing to do all his business with out-of-state generators and claiming that the five percent license fee discriminated against out-of-state waste. The appellant advances no authority that such a claim would be cognizable.

■ The appellant further contends, under yet another prong of *Complete Auto Transit*, that Fleming County's fee fails the test of "internal consistency" that the Commerce Clause imposes on state tax measures. Contrary to the Commonwealth's assertion, the internal consistency test applies to facially neutral taxes. *American Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266, 296, 107 S.Ct. 2829, 2846–47, 97 L.Ed.2d 226 (1987). The test is an expression of the "fair apportionment" requirement, the purpose of which is "to ensure that each State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 260–61, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989). The internal consistency test mandates that a tax "be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Id.*, 488 U.S. at 261, 109 S.Ct. at 589. In *Goldberg*, Illinois had imposed a tax on the gross charge of telephone calls originated or terminated in Illinois, and on those calls charged to an Illinois service address, with a tax credit given where a tax had been paid to another state on the same call. The tax passed the

internal consistency test because of the tax credit and because "if every State taxed only those interstate phone calls which are charged to an in-state service address, only one State would tax each interstate telephone call." *Id.*

Similarly, Pennsylvania's vehicle registration fee in *Scheiner* did not violate the internal consistency test because each state gave total reciprocity to registrations in other states; hence, there was no danger of multiple taxation on interstate commerce. *Scheiner*, 483 U.S. at 283, 107 S.Ct. at 2840. Here it is just as clear that no multiple taxation would result, even if every state had a statute identical to KRS 68.178 and if every county imposed the same fee as Fleming County's, because each unit of interstate waste would still be brought into only one landfill situated in one county. KRS 68.178 therefore does not offend the internal consistency test. The other aspect of fair apportionment, "external consistency," has not been raised and accordingly is not addressed here.

The appellant's argument regarding Section 171 of the Kentucky Constitution, not having been raised below, is not within the scope of this review.

The judgment of the circuit court is affirmed.

All concur.