OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 10, 1999

Mr. Robert J. Huston
Chairman, Texas Natural Resource
 Conservation Commission
P.O. Box 13087
Austin, Texas 78711-3087

Opinion No. JC-0017

Re:   Whether section 361.0235 of the Health and Safety Code, banning the importation into Texas of hazardous waste generated in a foreign country, is constitutional   (RQ-1165)

Dear Mr. Huston:

Your predecessor in office asked us to determine whether section 361.0235 of the Health and Safety Code, banning the importation into Texas of hazardous waste generated in a foreign country, violates the Commerce Clause of the United States Constitution. Section 361.0235 provides:

(a) Except as otherwise provided by this section, a person may not receive, transport, or cause to be transported into this state, for the purpose of treatment, storage, or disposal in this state, hazardous waste generated in a country other than the United States.

(b) This section may not be construed or applied in a manner that interferes with the authority of the federal government to regulate commerce with foreign nations and among the several states provided by Article I, Section 8, Clause 3, of the United States Constitution.

(c) This section does not apply to a person who transports or receives material from a country other than the United States for:

(1) recycling or reuse of the material; or

(2) use of the material as a feedstock or ingredient in the production of a new product.

(d) This section does not apply to waste transported or received for treatment, storage, or disposal at a hazardous waste management facility that is owned by the generator of the waste or by a parent, subsidiary, or affiliated corporation of the generator.

(e) This section does not apply to waste received by:

(1) a producer of the product or material from which the waste is generated; or

(2) a parent, subsidiary, or affiliated corporation of such producer.

(f) This section does not apply to waste generated in Mexico at an approved maquiladora facility to the extent that such waste:

(1) was generated as a result of the processing or fabrication of materials imported into Mexico from Texas on a temporary basis; and

(2) is required to be re-exported to the United States under Mexican law.

TEX. HEALTH & SAFETY CODE ANN. § 361.0235 (Vernon Supp. 1999).

The Commerce Clause gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. CONST. art. I, § 8, cl. 3. While the clause is phrased as an affirmative grant of power, it has a "negative" or "dormant" aspect that restricts the states' power to enact laws that interfere with interstate or foreign commerce. *Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 98 (1994). The principle underlying the interstate aspect of the Commerce Clause is that "our economic unit is the Nation," and states therefore may not act in isolation as separate economic units. *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537-38 (1949); *accord, Oregon Waste Sys.*, 511 U.S. at 98. Similarly, the foreign aspect of the Commerce Clause is intended to allow Congress to "speak with one voice" for the country in economic dealings with foreign nations. *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 449 (1979); *see also Chemical Waste Management, Inc. v. Templet*, 770 F. Supp. 1142, 1152 (M.D. La. 1991), *aff'd*, 967 F.2d 1058 (5th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). The Supreme Court has rejected arguments that hazardous waste is not a legitimate article of commerce subject to constitutional protection because it has no value or because the dangers inherent in its movement outweigh its worth in commerce. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 622-23 (1978); *see also Chemical Waste Management*, 770 F. Supp. at 1149 (finding that foreign generated hazardous waste is object of commerce subject to Commerce Clause protection). "All objects of interstate trade merit Commerce Clause protection," the Court has said. *City of Philadelphia*, 437 U.S. at 622.

When invoking the interstate portion of the Commerce Clause, courts have sought to avoid the evils of state economic isolationism and protectionism "while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people." *Id.* at 623-24. Thus when considering whether a state's regulation of interstate commerce is permissible, courts apply one of two tests. "'Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate

commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Id.* at 624 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). But where a state law effects simple economic protectionism, the statute is virtually invalid per se. *Id.* "The clearest example of such legislation is a law that overtly blocks the flow of interstate commerce at a State's borders." *Id.* A law that unambiguously discriminates against out-of-state goods is characterized as a protectionist measure that cannot withstand Commerce Clause scrutiny unless the state can demonstrate that the law furthers a legitimate local purpose that cannot be adequately served by nondiscriminatory alternatives. *Oregon Waste Sys.*, 511 U.S. at 100-01.

When considering a state law that burdens foreign commerce, courts begin with the tests applicable to the interstate Commerce Clause, then apply an even higher level of scrutiny. *See Japan Line*, 441 U.S. at 446; *Chemical Waste Management*, 770 F. Supp. at 1152-53; *Trans Chemical Ltd. v. China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 300 n.145 (S.D. Tex. 1997), *aff'd*, 161 F.3d 314 (5th Cir. 1998). "Foreign commerce is pre-eminently a matter of national concern," and the country must act uniformly in regulating commercial relations with foreign nations. *Japan Line*, 441 U.S. at 448. A state law that discriminates on its face against articles of commerce from foreign nations based solely on their origin violates the foreign Commerce Clause. *Chemical Waste Management*, 770 F. Supp. at 1153.

Section 361.0235 of the Health and Safety Code overtly bans the importation into Texas of waste generated in a foreign country. The ban promotes the state's public policy, expressed in section 361.0231 of the Health and Safety Code, that "adequate capacity should exist for the proper management of industrial and hazardous waste generated in this state." TEX. HEALTH & SAFETY CODE ANN. § 361.0231(a) (Vernon 1992). This policy was articulated in the committee report on the legislation enacting section 361.0235:[1]

> [W]aste imported into the state poses certain management and societal costs. Not only must the waste be monitored in the cradle to grave fashion as set forth by law, it must also be managed to prevent risks to public health and the environment. These issues create a condition where foreign waste is in competition for the limited adequate capacity designated for waste generated within the state's borders.

HOUSE COMM. ON ENVIRONMENTAL AFFAIRS, BILL ANALYSIS, Tex. H.B. 1444, 72d Leg., R.S. (1991). Accordingly, the ban on importation of waste from foreign countries in section 361.0235 unambiguously discriminates against out-of-state commerce and on its face is simply a protectionist measure.

---

[1]Section 361.0235 was originally enacted as section 361.0232, Act of May 14, 1991, 72d Leg., R.S., ch. 336, § 1, 1991 Tex. Gen. Laws 1383, and was renumbered by Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 17.01(27) 1995 Tex. Gen. Laws 458, 847.

The Supreme Court has held that the preservation of waste disposal capacity, while a legitimate legislative goal, does not justify a patent discrimination against out-of-state waste. In *City of Philadelphia*, a New Jersey statute barred from the state "any solid or liquid waste which originated or was collected outside the territorial limits of the State." *City of Philadelphia*, 437 U.S. at 618. New Jersey argued that the statute did not promote economic protectionism in violation of the Commerce Clause because the statute's goal of preserving disposal capacity was to protect environmental resources, not economic ones. *Id.* at 625-26. But the Court explained that the statute was unconstitutional on its face even if its underlying purpose was legitimate:

> [I]t does not matter whether the ultimate aim of ch. 363 is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of all waste into the State's remaining landfills, even though interstate commerce may incidentally be affected. But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently.

*Id.* at 626-27; *see also Chemical Waste Management*, 770 F. Supp. at 1152 (finding unconstitutional per se state's absolute ban on importation into state of foreign hazardous waste based solely on its origin).

On the same grounds, the Supreme Court declared Michigan county restrictions on waste importation unconstitutional, noting that if the state was concerned about waste disposal capacity, it could have addressed the problem without discriminating between domestic and out-of-state waste. *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*, 504 U.S. 353, 366-67 (1992). "Michigan could, for example, limit the amount of waste that landfill operators may accept each year." *Id.* at 367. But in the absence of a valid reason for banning waste from outside the state, but not from inside the state, the statute was unconstitutional. *Id.* And in *Diamond Waste, Inc. v. Monroe County, Georgia*, 939 F.2d 941 (11th Cir. 1991), the court, finding unconstitutional a county statute that banned out-of-county waste, observed:

> If Monroe County's goals are to preserve existing landfill space and to prevent environmental damage, these goals could be met just as effectively by less discriminatory measures. . . . Monroe County could reduce the amount of garbage deposited by setting reasonable daily tonnage limits on imported waste and granting permission to dump on a "first come, first served" basis. Or Monroe County could auction permits for dumping fixed amounts of imported waste. Or dumping rights for out-of-county garbage could be established by lottery. While this is not an exhaustive list of alternatives available to Monroe County, this list does show that Monroe

> County can avoid burdening interstate commerce while feasibly protecting available landfill space, its citizens, and the environment.

*Id.* at 945. Accordingly, we conclude that section 361.0235 of the Health and Safety Code does not pass constitutional muster because it overtly discriminates against interstate commerce without furthering a legitimate local purpose that cannot be adequately served by nondiscriminatory means.

A statute that fails the tests applicable to laws burdening interstate commerce cannot withstand the even stricter scrutiny applied to laws affecting foreign commerce. *See Chemical Waste Management*, 770 F. Supp. at 1152-53. We conclude that section 361.0235 of the Health and Safety Code violates the foreign commerce aspect of the Commerce Clause.

The exceptions to section 361.0235 do not save it from constitutional infirmity. The exceptions allow importation from a foreign country of certain types of hazardous waste, namely: waste to be recycled or used as a feedstock or ingredient in the production of a new product; waste to be treated, stored, or disposed of at a hazardous waste management facility owned by the generator of the waste; waste received by the producer of the product from which the waste was generated; or certain waste generated in Mexico at an approved maquiladora facility. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.0235(c)-(f) (Vernon Supp. 1999). None of the exceptions, however, provides a basis for treating these types of foreign-country generated waste differently from Texas waste.

Nor does the "savings provision" in section 361.0235(b) enable the statute to withstand Commerce Clause scrutiny. Section 361.0235(b) provides: "This section may not be construed or applied in a manner that interferes with the authority of the federal government to regulate commerce with foreign nations and among the several states provided by Article I, Section 8, Clause 3, of the United States Constitution." This provision merely states the obvious: state statutes are void to the extent they conflict with the United States Constitution. U.S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ."). Because the foreign waste ban of section 361.0235 is invalid per se, it cannot constitutionally be applied in any way. Its "savings provision" is of no effect.

In short, then, a state may not discriminate against the importation of waste generated in a foreign country unless it can demonstrate a reason, apart from its origin, why foreign waste must be treated differently. Section 361.0235 of the Health and Safety Code overtly discriminates against hazardous waste generated in a foreign country, and we find no justification on the face of the statute or in its legislative history for treating such waste differently than other waste. Its clear purpose is to exclude foreign waste in order to preserve space for the state's own waste. Courts have found this type of protectionism to be unconstitutional per se. Accordingly, we conclude that section 361.0235, Health and Safety Code, violates the Commerce Clause of the United States Constitution.

## S U M M A R Y

Section 361.0235 of the Health and Safety Code, banning the importation into Texas of hazardous waste generated in a foreign country, violates the Commerce Clause of the United States Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Barbara Griffin
Assistant Attorney General